UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| CYNTHIA M. WHITWORTH, | ) |  |
|---|---|---|
| Plaintiff, | ) ) ) |  |
| v. | ) ) | Case No. 2:18-CV-00034 JAR |
| ANDREW SAUL, Commissioner, Social Security Administration,[1] | ) ) ) ) |  |
| Defendant. | ) ) |  |

**MEMORANDUM AND ORDER**

This is an action under 42 U.S.C. § 405(g) for judicial review of the Commissioner of Social Security's final decision denying Plaintiff Cynthia Whitworth's application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq.* and supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381, *et seq.*

I.  **Background**

Plaintiff applied for disability insurance benefits and supplemental security income benefits on July 17, 2014, alleging disability as of February 14, 2014[2] due to anxiety, depression, severe spinal stenosis, reversal of cervical lordosis, and Hodgkin's lymphoma. After her

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Andrew Saul is substituted for his predecessor, Acting Commissioner Nancy A. Berryhill. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] At the hearing before the ALJ, Plaintiff's counsel asked to amend Plaintiff's onset date of disability to September 28, 2014 based on Dr. Denise Trowbridge's opinion that Plaintiff was capable of sedentary work, prior to the HD symptoms. (Tr. 99, 111, 154, 171). The ALJ's decision does not reflect the amended onset date; rather, the ALJ evaluated Plaintiff's claims from February 14, 2014. (Tr. 19). Plaintiff does not argue the ALJ erred in this regard and in any event, an amendment of the onset date would have had no impact on Plaintiff's RFC given that the ALJ considered the entire record. Bauer v. Soc. Sec. Admin., 734 F. Supp. 2d 773, 802 (D. Minn. 2010) (citations omitted).

application was denied at the initial administrative level, Plaintiff requested a hearing before an administrative law judge ("ALJ"). Following a hearing on March 28, 2017, the ALJ issued a written decision on September 14, 2017, denying Plaintiff's application. Plaintiff's request for review by the Appeals Council was denied on April 30, 2018. Thus, the decision of the ALJ stands as the final decision of the Commissioner. See Sims v. Apfel, 530 U.S. 103, 107 (2000).

## II. Facts

The Court adopts Plaintiff's Statement of Facts (Doc. No. 17-1) to the extent they are admitted by the Commissioner (Doc. No. 27-1). The Court also adopts Defendant's Statement of Additional Facts. (Doc. No. 27-2). Together, these statements provide a fair and accurate description of the relevant record before the Court. Additional specific facts will be discussed as necessary to address the parties' arguments.

## III. Standards

The Court's role on judicial review is to determine whether the ALJ's findings are supported by substantial evidence in the record as a whole. Johnson v. Astrue, 628 F.3d 991, 992 (8th Cir. 2011). Substantial evidence is less than a preponderance, but enough that a reasonable mind would accept it as adequate to support the Commissioner's conclusion. Chismarich v. Berryhill, 888 F.3d 978, 979 (8th Cir. 2018) (per curiam). The Court may not reverse merely because substantial evidence exists in the record that would support a contrary outcome or because the court would have decided the case differently. Chaney v. Colvin, 812 F.3d 672, 676 (8th Cir. 2016). A reviewing court must consider evidence that both supports and detracts from the ALJ's decision. Id. If it is possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, the court must affirm the decision of the Commissioner. Id. In other words, a court should "disturb the ALJ's decision only if it

falls outside the available zone of choice." Papesh v. Colvin, 786 F.3d 1126, 1131 (8th Cir. 2015). A decision does not fall outside that zone simply because the reviewing court might have reached a different conclusion had it been the finder of fact in the first instance. Id. The Court defers heavily to the findings and conclusions of the Social Security Administration. Hurd v. Astrue, 621 F.3d 734, 738 (8th Cir. 2010).

To determine whether the ALJ's final decision is supported by substantial evidence, the Court is required to review the administrative record as a whole and to consider:

(1) The findings of credibility made by the ALJ;
(2) The education, background, work history, and age of the claimant;
(3) The medical evidence given by the claimant's treating physicians;
(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;
(5) The corroboration by third parties of the claimant's physical impairment;
(6) The testimony of vocational experts based upon prior hypothetical questions which fairly set forth the claimant's physical impairment; and
(7) The testimony of consulting physicians.

Brand v. Sec'y of Dept. of Health, Educ. & Welfare, 623 F.2d 523, 527 (8th Cir. 1980).

The Social Security Act defines as disabled a person who is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The impairment must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 1382c(a)(3)(B).

3

The Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920(a), 404.1520(a). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005) (quoting Eichelberger v. Barnhart, 390 F.3d 584, 590-91 (8th Cir. 2004)).

First, the claimant must not be engaged in "substantial gainful activity" ("SGA"). 20 C.F.R. §§ 416.920(a), 404.1520(a). Second, the claimant must have a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 416.920(c), 404.1520(c). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work." Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting Caviness v. Massanari, 250 F.3d 603, 605 (8th Cir. 2001)).

If the claimant has a severe impairment, the ALJ must determine at step three whether any of the claimant's impairments meets or equals an impairment listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. Id.

If the claimant's impairment does not meet or equal a Listing, the ALJ must determine the claimant's residual functional capacity ("RFC"). See 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00; 20 C.F.R. § 404.1520a(c)(3). RFC is an assessment of the claimant's ability to perform sustained work-related physical and mental activities in light of his impairments. SSR 96–8p. The relevant mental work activities include understanding, remembering, and carrying out

4

instructions; responding appropriately to supervision and co-workers; and handling work pressures in a work setting. 20 C.F.R. § 404.1545(c).

At step four, the ALJ must determine whether, given his RFC, the claimant can return to his past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f); McCoy v. Astrue, 648 F.3d 605, 611 (8th Cir. 2011). If the claimant can still perform past relevant work, he will not be found to be disabled; if not, the ALJ proceeds to step five to determine whether the claimant is able to perform any other work in the national economy in light of his age, education and work experience. 20 C.F.R. §§ 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, then he will be found to be disabled. 20 C.F.R. §§ 416.920(a)(4)(v), 404.1520(a)(4)(v).

Through step four, the burden remains with the claimant to prove he is disabled. Brantley, 2013 WL 4007441, at *3 (citation omitted). At step five, the burden shifts to the Commissioner to establish that the claimant maintains the RFC to perform a significant number of jobs within the national economy. Id. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." Meyerpeter v. Astrue, 902 F. Supp.2d 1219, 1229 (E.D. Mo. 2012) (citations omitted).

## IV. Decision of the ALJ

The ALJ found Plaintiff had the severe impairments of degenerative disc disease together with Hodgkin's lymphoma history status post curative treatment[3], but that no impairment or combination of impairments met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 19). After considering the entire record, the ALJ determined that Plaintiff has the RFC to perform light work except that she

---

[3] The ALJ also determined that Plaintiff had the nonsevere impairments of headaches, carpal tunnel syndrome and "medically determinable" mental impairments. (Tr. 19-20).

5

should never climb ropes, ladders or scaffolds, but is able to occasionally climb ramps or stairs. The ALJ further determined that Plaintiff can occasionally stoop, kneel, crouch and crawl, frequently handle, finger and feel with her bilateral upper extremities, and is limited to tasks in the workplace consistent with a specific vocational preparation (SVP) of no more than 4 (semiskilled). (Tr. 21-22).

The ALJ found that Plaintiff is unable to perform any past relevant work (Tr. 28), but that there are jobs in the national economy that she can perform given her age, education, work experience and RFC, such as stock checker apparel and parking lot attendant (Tr. 29). The ALJ further found that Plaintiff could perform sedentary and unskilled jobs with a SVP of two, such as optical goods assembler, document preparer, weight tester, and surveillance system monitor. (Tr. 29-30). Thus, the ALJ found Plaintiff was not disabled as defined by the Act. (Tr. 30).

## V. Discussion

In her appeal of the ALJ's decision, Plaintiff raises two issues. First, Plaintiff argues the ALJ erred in failing to determine whether her peripheral neuropathy secondary to chemotherapy and lumbar stenosis were severe impairments. (Doc. No. 17 at 5-8). Second, Plaintiff argues the ALJ erred by failing to properly evaluate the medical opinions of record regarding her physical limitations. (Id. at 9-11).

### A. Severe impairment

At Step Two of the evaluation process, the ALJ must determine if a claimant suffers from a severe impairment. A severe impairment is an impairment or combination of impairments that significantly limits a claimant's physical or mental ability to perform basic work activities. See 20 C.F.R. §§ 416.920(c), 416.921. Basic work activities are those "abilities and aptitudes necessary to perform most jobs," including (1) physical functions such as walking, standing,

6

sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1521(b), 416.921(b). Plaintiff bears the burden of establishing that her impairments are severe. Kirby v. Astrue, 500 F.3d 705, 707 (8th Cir. 2007) (citing Mittlestedt v. Apfel, 204 F.3d 847, 852 (8th Cir. 2000)). Although severity is not an onerous requirement to meet, it is also "not a toothless standard." Id. at 708.

Plaintiff argues the medical record documents diagnoses of peripheral neuropathy secondary to chemotherapy and lumbar stenosis, and that the ALJ erred in not considering these conditions to be severe impairments. In support of her argument, Plaintiff references a March 27, 2015 consultative examination performed by Alan Spivak, M.D. (Tr. 775-782). Dr. Spivak's clinical impressions included "alleged spinal stenosis with back pain and neck pain and reversal of cervical lordosis and dextroscoliosis"; peripheral neuropathy secondary to chemotherapy; and asthenia and fatigue secondary to chemotherapy. (Tr. 777). Plaintiff also references a December 4, 2015 Physical Medical Source Statement from her treating physician Rebecca Rodriguez, M.D., diagnosing her with chronic musculoskeletal pain; Hodgkin lymphoma s/p (status post) chemo and radiation; chemotherapy induced neuropathy; and lumbar foraminal stenosis. (Tr. 884). Lastly, Plaintiff argues that severe lumbar stenosis is supported in the medical record through MRI imaging performed on June 26, 2014, July 23, 2015 and July 14, 2016. (Tr. 422, 602-03, 924, 1314-15).

The Commissioner maintains that the diagnoses of peripheral neuropathy secondary to chemotherapy and lumbar stenosis do not warrant the designation of separate severe impairments

7

because the ALJ considered all spine diagnoses – including lumbar stenosis – as part of a more broadly defined disorder, degenerative disc disease, and because Plaintiff's peripheral neuropathy secondary to chemotherapy was encompassed in the ALJ's finding of severe Hodgkin's lymphoma history, status post curative treatment. The Court agrees with the Commissioner. A failure to list a specific impairment at step two of the sequential evaluation process is not an error unless the impairment is "separate and apart" from the other listed impairments. See Gragg v. Astrue, 615 F.3d 932, 939 (8th Cir. 2010) ("The reports of [the experts evaluating claimant] are entirely consistent with the ALJ's determination that [claimant] had a learning disorder, and do not support [claimant's] argument that [the experts] concluded borderline intellectual functioning was a severe impairment separate and apart from a learning disorder."); Gregory v. Comm'r, Soc. Sec. Admin., 742 F. App'x 152, 156 (8th Cir. 2018) (ALJ not required to explicitly list claimant's pseudoaneurysm and aortic root abscess when determining whether claimant had severe impairment, absent any indication that pseudoaneurysm and aortic root abscess were separate and apart from listed heart health issues that ALJ considered); see also Berger v. Berryhill, No. 4:18-CV-00047-PLC, 2019 WL 1490880, at *11 (E.D. Mo. Apr. 4, 2019) (claimant's headaches were neither separate nor distinct from the severe impairments enumerated and considered by the ALJ, including claimant's cervical fusion).

Moreover, even if the ALJ erred in excluding Plaintiff's peripheral neuropathy and lumbar stenosis from the list of severe impairments, the Court finds such error was harmless because the ALJ clearly considered all of Plaintiff's limitations throughout her RFC analysis. See Faint v. Colvin, 26 F. Supp. 3d 896, 910 (E.D. Mo. 2014) (ALJ's failure to find plaintiff's hearing condition to be a severe impairment was harmless given the ALJ's inclusion of the

condition in his overall analysis); see also 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2) ("If you have more than one impairment. We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,' as explained in §§ 404.1520(c), 404.1521, and 404.1523, when we assess your residual functional capacity."); DeGroot v. Berryhill, No. 1:17CV202 ACL, 2019 WL 1316964, at *7 (E.D. Mo. Mar. 22, 2019) (citing Coleman v. Astrue, No. 4:11CV2131 CDP, 2013 WL 665084, at *10 (E.D. Mo. Feb. 23, 2013) ("Where an ALJ errs by failing to find an impairment to be severe, such error is harmless if the ALJ finds the claimant to suffer from another severe impairment, continues in the evaluation process, and considers the effects of the impairment at the other steps of the process."). .

Here, the ALJ specifically discussed Plaintiff's reported difficulty with common functional abilities such as standing, walking, sitting, bending, lifting, reaching, remembering, completing tasks, and using her hands. (Tr. 22, 318). The ALJ also considered Plaintiff's subjective statements regarding pain and other limitations, and conducted a proper analysis of the credibility of those statements. (Tr. 28).[4] The ALJ then accommodated those limitations she found consistent with the record evidence. (Tr. 21-22). To account for Plaintiff's mobility issues, the ALJ found she could only occasionally stoop, kneel, crouch, and crawl. As for Plaintiff's residual hand complaints, the ALJ limited her to frequent handling, fingering, and feeling. As a result, the case would not have been decided differently in the absence of the ALJ's claimed error. Byes v. Astrue, 687 F.3d 913, 917–18 (8th Cir. 2012); see also Hepp v. Astrue, 511 F.3d 798, 806 (8th Cir. 2008) (declining to remand for alleged error in opinion when error "had no bearing on the outcome") (internal quotation marks omitted).

---

[4] Plaintiff does not challenge the ALJ's credibility determination.

9

Plaintiff argues the ALJ failed to include limitations associated with her lumbar stenosis such as the need to lie down and elevate her legs; however, she has no record evidence supporting these additional limitations. Indeed, as discussed below, the ALJ found no support for such limitations in the records of Plaintiff's treating sources. (Tr. 27). Plaintiff also takes issue with the ALJ's conclusion that she was able to frequently handle, finger and feel with her bilateral upper extremities despite having had surgery for bilateral carpal tunnel syndrome in 2016. The ALJ properly found these limitations consistent with the RFC assessment. Plaintiff testified that the surgery "helped a really good amount" (Tr. 124) and resolved 90% of her numbness and tingling (Tr. 125-26, 976). While Plaintiff continued to experience some issues lifting or opening items (id.), her treatment records indicate that she retains a minimal 4/5 bilateral hand strength and diminished sensation in the median nerve distribution and had no hand-muscle atrophy. (Tr. 26, 1324). This is not inconsistent with the findings of the ALJ and, therefore, remand is not appropriate.

**B. Medical opinion evidence**

Next, Plaintiff argues the ALJ failed to properly evaluate the findings and opinions of her treating physician Rebecca Rodriguez, M.D.; the State agency consultative examiner Alan Spivack, M.D.; and the State agency non-examining consultant Denise Trowbridge, M.D.

Under the applicable social security regulations, the opinion of a treating physician is normally entitled to controlling weight.[5] Thomas v. Berryhill, 881 F.3d 672, 675 (8th Cir. 2018)

---

[5] For claims filed on or after March 27, 2017, the regulations have been amended to eliminate the treating physician rule. The new regulations provide that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources," but rather, the Administration will consider all medical opinions according to several enumerated factors, the "most important" being supportability and consistency. 20 C.F.R. § 404.1520c. Plaintiff filed her claim in 2014, so the previous Regulations apply.

(citation omitted). "However, the Commissioner may discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence," and "[t]he Commissioner may also assign little weight to a treating physician's opinion when it is either internally inconsistent or conclusory." Id. The ALJ should consider several factors in weighing medical opinions from a treating source, including the length of the treatment relationship and the frequency of examination. Lawson v. Colvin, 807 F.3d 962, 965 (8th Cir. 2015) (quoting Casey v. Astrue, 503 F.3d 687, 692 (8th Cir. 2007)). Whether the ALJ gives the opinion of a treating physician great or little weight, the ALJ must give "good reasons" for doing so. Reece v. Colvin, 834 F.3d 904, 909 (8th Cir. 2016); 20 C.F.R. § 404.1527(c)(2)).

Opinions of non-examining sources are generally given less weight than those of examining sources. Lillard v. Berryhill, 376 F. Supp. 3d 963, 981–82 (E.D. Mo. 2019) (citing Willcockson v. Astrue, 540 F.3d 878, 880 (8th Cir. 2008)). When weighing the opinion of a non-examining source, the ALJ must evaluate the degree to which the source considered all of the pertinent evidence and the degree to which the source provides supporting explanations for her opinion. Id. (citing 20 C.F.R. § 416.927(c)(1), (c)(3)).

Once the ALJ has decided how much weight to give a medical opinion, the Court's role is limited to reviewing whether substantial evidence supports this determination, not deciding whether the evidence supports the plaintiff's view of the evidence. See Brown v. Astrue, 611 F.3d 941, 951 (8th Cir. 2010).

### 1. Rebecca Rodriguez, M.D.

On December 4, 2015, Dr. Rodriguez completed a Physical Medical Source Statement. (Tr. 884-86). Dr. Rodriguez found that because of chronic musculoskeletal pain; Hodgkins

lymphoma s/p (status post) chemo and radiation; chemotherapy induced neuropathy; and lumbar foraminal stenosis, Plaintiff could only sit for ten minutes at a time or two hours total in a workday without pain; stand for fifteen minutes at a time or two hours total in a workday without pain; lift less than five pounds; and never climb, crouch or bend. (Tr. 884-85). Handling and fingering was limited. (Tr. 886). Dr. Rodriguez opined that Plaintiff would have to assume a reclining and supine position for up to 30 minutes 1-3 times a day and elevate her legs to a height of 2-3 feet 1-3 times a day while sitting to help with control of pain or fatigue. (Tr. 884). In describing Plaintiff's limitations, Dr. Rodriguez stated:

> It is difficult for patient to move in a way that would require bending over due to the severity of her lumbar back. She definitely cannot perform those tasks with [sic] significant difficulty or pain. The problems in her hands with strength and sensation impair her ability to hold onto things and use fingers effectively.

(Tr. 886).

On April 10, 2017, in response to interrogatories propounded by Plaintiff's attorney, Dr. Rodriguez stated that Plaintiff continued to need to assume a supine position for up to 30 minutes, 1-3 times per day and to elevate her legs up to a height of 2-3 feet, 1-3 times a day while sitting, "[d]ue to chronic musculoskeletal pain, Hodgkin lymphoma, s/p chemo and radiation, chemotherapy induced neuropathy and lumbar foraminal stenosis impaired strength and sensation in hands, fingers. Chronic fatigue, difficulty bending, due to lumbar pain." (Tr. 1560-61). Dr. Rodriguez opined that Plaintiff would miss at least 15 percent of an 8-hour work day due to unscheduled breaks and would miss more than two days of work per month due to pain, fatigue, or other medical issues. (Tr. 1561).

The ALJ discussed Dr. Rodriguez's findings of limitations and the 2015 and 2017 opinions and gave them "little to no weight" because they were inconsistent with the record as a whole and with Dr. Rodriguez's treatment records showing that once Plaintiff's cancer was in

remission, she was cleared to return to work. (Tr. 25, 27-28). The ALJ also noted that Dr. Rodriguez's 2015 source statement indicating significant hand and arm use limitations predated Plaintiff's carpal tunnel surgery in 2016. Dr. Rodriguez's 2017 source statement did not include hand and arm use limitations. (Tr. 27). After review of the record, the Court finds substantial evidence to support the ALJ's decision to discount Dr. Rodriguez's opinions.

As the ALJ noted, although Dr. Rodriguez observed some limitations such as decreased range of motion and strength in both hips and an antalgic gait (Tr. 1023), these findings do not explain the substantial limitations – including significant hand and arm use limitations – identified on her 2015 medical source statement, and were inconsistent with Dr. Spivak's consultative findings of normal upper and lower extremity strength (Tr. 25, 781-82). Likewise, the ALJ found Dr. Rodriguez's 2017 limitations necessitating that Plaintiff lie down and prop up her legs lacked support in her treatment records as well as the records of Plaintiff's other treating sources. (Tr. 27). In particular, the ALJ notes that nowhere in the treatment record does Plaintiff report that elevating her legs improves her symptoms, nor does Dr. Rodriguez suggest that Plaintiff elevate her legs to alleviate symptoms. (Tr. 27).

The ALJ further found that limitations necessitating workplace absences were more a reflection of Plaintiff's unsubstantiated subjective complaints than of reasonable restrictions due to medical necessity. (Tr. 27). Significantly, the ALJ noted that Dr. Rodriguez diagnosed Plaintiff with narcotic dependence, which could "underscore" her claims of pain and other limiting symptoms. (Tr. 27, 1139).

Accordingly, the Court finds the reasons articulated by the ALJ are valid reasons for discounting the opinions of Dr. Rodriguez. See, e.g., Anderson v. Astrue, 696 F.3d 790, 794 (8th Cir. 2012) (holding the ALJ did not err in giving minimal weight to the report of a treating

physician where the opinion was conclusory and contained significant limitations not reflected in his treatment notes); Hogan v. Apfel, 239 F.3d 958, 961 (8th Cir. 2001) (affirming the ALJ's decision to discount the opinion of a treating physician where it contained limitations that "stand alone" and "were never mentioned in [the physician's] numerous records of treatment ... nor were they supported by any objective testing or reasoning which would indicate why the claimant's functioning need be so restricted").

### 2. Alan Spivak, M.D.

Dr. Spivak conducted a consultative examination on March 27, 2015. (Tr. 775-782). Plaintiff complained of throbbing pain in her low back radiating to her hips and legs; weakness and fatigue secondary to chemotherapy; pain in her neck radiating to her shoulders; and weakness, some shortness of breath, and neuropathy in her hands secondary to chemotherapy. (Tr. 775-76). She reported she could walk for less than half a block; stand for one minute; sit for 10 minutes; lift 5 pounds; and that she cannot bend over. (Tr. 775).

Dr. Spivak observed that Plaintiff walks very slowly with a wide-based gait secondary to pain in her low back and hips and can barely stand on her toes or heels. (Tr. 776). He also noted Plaintiff's straight leg raising was positive to 70 degrees and that she had decreased appreciation of light touch and pinprick on the right arm and right lower extremity. (Tr. 777). Dr. Spivak's clinical impressions included "alleged spinal stenosis with back pain and neck pain and reversal of cervical lordosis and dextroscoliosis"; peripheral neuropathy secondary to chemotherapy; and asthenia and fatigue secondary to chemotherapy. (Tr. 777).

Dr. Spivak also provided a source statement concerning Plaintiff's extremity limitations. He reported that Plaintiff had moderate difficulty picking up and holding a cup, mild difficulties in the right hand and moderate difficulties in the left hand when opening a doorknob, and

moderate difficulties in the left hand and severe difficulties in the right hand when squeezing. Plaintiff had only mild difficulty picking up a coin or pen, buttoning/unbuttoning, zipping/unzipping, and tying shoelaces. (Tr. 779). However, Plaintiff had full bilateral grip and upper extremity strength and full lower extremity strength. (Tr. 781-82).

The ALJ gave Dr. Spivak's findings great weight because they were consistent with Plaintiff's impairments, but assigned little weight to his opinions regarding Plaintiff's fine and gross manipulative movements of the hands and fingers because they appeared inconsistent with his findings of Plaintiff's full grip and arm strength as well as treatment records both before and after the date of his opinion. (Tr. 24). The Court finds no error. "An appropriate finding of inconsistency with other evidence alone is sufficient to discount the opinion." Rodgers v. Berryhill, No. 1:16-CV-00010 PLC, 2017 WL 4038140, at *10 (E.D. Mo. Sept. 13, 2017) (ALJ properly assigned consultative examiner less weight because his opinion was inconsistent with findings in his own exam and the record as a whole); Goff v. Barnhart, 421 F.3d 785, 790-91 (8th Cir. 2005). See also Vance v. Berryhill, 860 F.3d 1114, 1121 (8th Cir. 2017) (where the medical record did not support the opinion of the claimant's treating physician, the ALJ could "rely instead on the opinions of the state agency medical consultants, which were more consistent with the medical evidence").

### 3. Denise Trowbridge, M.D.

A Disability Determination Explanation was conducted by Dr. Trowbridge, a non-examining, non-treating state agency physician, on May 13, 2015. (Tr. 141-157). Dr. Trowbridge indicated limitations applicable as of that date, opining that Plaintiff was capable of sedentary work prior to her HD symptoms (ED 9/28/2014), and that she could return to sedentary work by September 2015. (Tr. 154). The ALJ gave Dr. Trowbridge's opinion limited weight because it

15

was more than two years old. (Tr. 28). Plaintiff argues that Dr. Trowbridge's assessment that she could not perform even sedentary work from late 2014 through May 2015 occurred during the relevant period and thus should have been considered. The Court finds no error given that Plaintiff's lymphoma was treated effectively within 12 months, and thus did not meet the duration requirement. 42 U.S.C. § 1382c(a)(3)(A) ("an individual shall be considered to be disabled for purposes of this subchapter if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than twelve months.").

In sum, the ALJ evaluated all of the medical opinion evidence of record and adequately explained her reasons for the weight given this evidence. For the reasons set out above, substantial evidence on the record as a whole supports the ALJ's evaluation of the medical opinion evidence.

### VI. Conclusion

The ALJ properly considered Plaintiff's severe impairments and evaluated the medical opinion evidence in determining the RFC. For these reasons, the Court finds the ALJ's decision is supported by substantial evidence contained in the record as a whole, and, therefore, the Commissioner's decision will be affirmed.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff's Complaint is **DISMISSED** with prejudice. A separate Judgment will accompany this Order.

Dated this 18th day of September, 2019.

_____
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE